RIVINUS v. LANGFORD.

LANGFORD v. RIVINUS.

(Circuit Court of Appeals, Second Circuit. July 29, 1896.)

**1. Conversion of Judgment—Damages.**

The fact that at the time of a conversion of a judgment the judgment debtors were insolvent does not necessarily limit the recovery to nominal damages, if thereafter such debtors became solvent.

**2. Same—Evidence.**

In an action by one against his partner for wrongfully satisfying a judgment standing in the name of the firm, but in reality belonging to the plaintiff, who had refused to satisfy it, evidence that one or more of the judgment defendants, though insolvent at the date of the satisfaction, became solvent a short time thereafter, is admissible to show what was the value of the judgment to plaintiff at the time of its satisfaction.

In Error to the Circuit Court of the United States for the Southern District of New York.

Action by David C. F. Rivinus against Thomas H. Langford for the conversion of a judgment. There was a judgment for plaintiff, and both plaintiff and defendant bring error.

Russell Duane and Morse & Griffin, for plaintiff.

Hamilton Odell, for defendant.

Before WALLACE and SHIPMAN, Circuit Judges, and TOWN-
SEND, District Judge.

TOWNSEND, District Judge. These are two writs of error,—
one by the defendant to review a judgment for the plaintiff, ren-
dered upon a verdict of the jury; and the other by the plaintiff to
review certain rulings of the court directing the jury to bring in
no verdict for the plaintiff, on account of certain expenses of the
trial. Counsel for the plaintiff having stated that, in the event of
an affirmance of the judgment, he would not press his claims, de-
fendant's writ of error only has been considered.

The plaintiff herein, David C. F. Rivinus, and the defendant,
Thomas H. Langford, were formerly partners, doing business un-
der the firm name of Rivinus & Langford. On December 31, 1884,
the partnership was dissolved, and it was then mutually agreed
that the assets thereof should be owned and controlled solely by
Rivinus. After said dissolution, a judgment for $2,936.29 was ob-
tained in favor of said partners against Henry W. Kane, William
J. McCaffrey, George W. Kane, and Abraham Kane, co-partners,
doing business under the firm name and style of the New York
State Clothing Company. Defendant, Langford, without authority
from plaintiff, accepted $357.15 in payment of said judgment, and
executed a satisfaction piece. Afterwards the $357.15 was paid by
defendant to plaintiff, under a stipulation that it should not affect
plaintiff's right to sue for the balance. Defendant has admitted
his want of authority to execute said satisfaction piece, and the
only question for the jury in said action was as to the measure
of damages for the conversion. The defendant claimed that as the
judgment debtors were insolvent, and the judgment uncollectible
at the time when it was satisfied, only nominal damages could be
recovered. The court overruled this contention, and admitted evi-
dence of the financial status and business prosperity of said judg-
ment debtors, from November 1, 1891, up to that time, showing
that, shortly after the execution of said satisfaction piece, one or
more of the judgment debtors were solvent and able to pay said
claim in full, and that the financial standing of said debtors had
continued good up to the time of the trial of the action. Plaintiff
also testified that one of the judgment debtors called on him in
the month of October, 1891, and asked him whether he would ac-
cept 16⅔ per cent., then 25 per cent., and then 33⅓ per cent., in
satisfaction of said judgment, and what sum he would accept, and
that he refused to accept either of said sums, or any sum less than
the principal and interest. The court also denied a motion to di-
rect a verdict for the plaintiff for nominal damages, and charged
the jury that the measure of damages was the value of the judg-
ment to the plaintiff at the date of the conversion, and that, in de-
termining what said value was, they might consider all the evi-
dence in the case; that, at the date of the conversion, the judgment
debtors were insolvent, and that, at a subsequent time prior to the
trial, they were solvent, and able to pay said judgment; that nei-
ther of these circumstances was absolutely controlling, but that,

from the whole evidence, they were to determine what the judgment was actually worth to the plaintiff at the time of the conversion. The defendant excepted to said rulings and refusal to direct a verdict, and to said charge.

The defendant claims that evidence of the solvency of the parties at a period subsequent to said conversion was inadmissible for the purpose of determining the damage. But this evidence was not admitted to show the value of said note at such subsequent period. The jury were distinctly instructed on this point as follows:

"The defendant in this case is liable for the difference between what he paid, with the interest, and the amount that this judgment was actually worth to the plaintiff on October 19, 1891. You will determine what it was worth by determining from the evidence in this case what money would have been paid for that judgment if this defendant had not interfered and taken $357.15."

We are unable to perceive any error in the admission of said evidence, or in the charge. The single question at issue was the value of the judgment to the plaintiff at the date of its conversion. The plaintiff insisted upon his right to hold the judgment until he could obtain full satisfaction. He was entitled to show the subsequent solvency of the partners, as bearing upon the question of actual value, and as tending to show what the judgment was worth to him. Such facts furnish the best, if not the only, satisfactory evidence of the most remunerative use for which the judgment was adapted. Sedg. Dam. § 252. The general rule of damages in cases of conversion, in the absence of special circumstances, is the value of the property at the time of the conversion, with interest thereon. Ormsby v. Mining Co., 56 N. Y. 623; Mechanics' & Traders' Bank v. Farmers' & Mechanics' Bank, 60 N. Y. 52; Cattle Co. v. Mann, 130 U. S. 79, 9 Sup. Ct. 458. Where the value of the property is fluctuating, the value may be fixed at the time the owner is deprived of his property, or within a reasonable time thereafter for replacing it. Baker v. Drake, 53 N. Y. 211, 66 N. Y. 518; Wehle v. Haviland, 69 N. Y. 448; Wright v. Bank, 110 N. Y. 237, 18 N. E. 79; Barnes v. Brown, 130 N. Y. 372, 29 N. E. 760; Galigher v. Jones, 129 U. S. 193, 9 Sup. Ct. 335. The market value at the time of conversion is ordinarily a satisfactorily accurate means of estimating plaintiff's loss. The underlying principle applicable to all cases is that stated in Baker v. Drake, supra, as follows:

"An amount sufficient to indemnify the party injured for the loss which is a natural, reasonable, and approximate result of the wrongful act complained of, and which a proper degree of prudence on the part of the plaintiff would not have averted, is the measure of damages which jurors are usually instructed to award except in cases where punitive damages are allowable."

In the case of the conversion of a chattel, where the market value fails to furnish the true measure of damages, the plaintiff may show, by any appropriate evidence, the actual injury from the loss of the possession of the chattel; and evidence of the value of such property prior or subsequent to the conversion is admissible to prove actual value at the time of conversion. Suydam v. Jenkins, 3 Sandf. 614; Parmenter v. Fitzpatrick, 135 N. Y. 190, 31 N. E. 1032; Sturges v. Keith, 57 Ill. 451; Peek v. Derry, 37 Ch. Div. 541.

In support of his contention, defendant cites King v. Ham, 6 Allen, 298, and Kellogg v. Tompson, 142 Mass. 76, 6 N. E. 860. In King v. Ham the maker of a note became insolvent upward of two years after the conversion, and while the note was still in the hands of the defendant. In Kellogg v. Tompson the note was converted before maturity, and defendant offered to show the financial condition of the maker at maturity, several months after conversion. The evidence of subsequent insolvency was in each case held to be inadmissible. In each of these cases the maker was apparently solvent at the time of the conversion, and plaintiff might presumably have sold the note for its face value. Under such circumstances, the court properly so applied the rule as to indemnify the plaintiff against loss. In cases of doubt as to what disposal plaintiff would have made of the note, the doubt should be resolved against the wrongdoer, and in favor of the injured party.

The judgment is affirmed.