(70 App. Div. 206.)

### NELSON v. HATCH et al.

(Supreme Court, Appellate Division, First Department. March 21, 1902.)

1. BREACH OF CONTRACT—ACTION FOR DAMAGES—EVIDENCE.

Plaintiff, by contract, was to advance to defendants, a law firm, certain money for the prosecution of certain litigation, in installments, and defendants assigned to plaintiff an interest in their contract, whereby W., a member of the firm, was to give his personal services in the litigation. Defendants, having sufficient money previously advanced by plaintiff to relieve the litigation from default, refused to advance it for the purpose for which it was paid, and subsequently made demand on plaintiff for an installment under the contract, which he refused, whereupon defendants notified him they canceled the contract. *Held*, that such acts of defendants was a breach of their contract, absolving plaintiff from making further advances.

2. SAME.

The refusal of W. to give his personal attention to the litigation constituted a breach of the contract with plaintiff, relieving him from its further fulfillment.

3. SAME—PLEADING AND PROOF—VARIANCE—AMENDMENT.

Where, in an action for breach of such contract, the complaint did not aver a failure of defendants to use the money advanced by plaintiff for the purposes of the litigation, but evidence thereof was received without objection, the complaint may be considered as amended, in order to give effect to the proof.

4. SAME—MEASURE OF DAMAGES.

The contract for the litigation in which plaintiff was to have an interest having been rendered impossible of performance, and it being impossible to establish what the plaintiff's damages were, or would have been, it was proper to permit him to prove the moneys he advanced and the expenses which he incurred as a basis of damages recoverable.

Ingraham, J., dissenting.

Appeal from judgment on report of referee.

Action by Thomas Nelson against Edward S. Hatch, impleaded with another. From a judgment entered on report of a referee in favor of plaintiff, defendant Hatch appeals. Affirmed.

Argued before VAN BRUNT, P. J., and HATCH, O'BRIEN, INGRAHAM, and LAUGHLIN, JJ.

William Rumsey, for appellant.
Thomas Darlington, for respondent.

HATCH, J.   When this case was before this court upon the former
appeal, it was held that the action was one to recover damages for a
breach of the contract, the subject of the action, and, it having been
determined by the referee before whom it was tried that it was an
action to rescind the contract, we reversed the judgment and ordered
a new trial.   56 App. Div. 149, 67 N. Y. Supp. 570.   Upon the new
trial the plaintiff has recovered judgment for the damages demanded
in his complaint.   The facts which appear upon the present trial are
not essentially different from those which appeared upon the first trial,
and, as they have been fully stated in the case as reported upon that
appeal, it is not essential that we again restate them in detail.

The obligation which the plaintiff assumed by the terms of his con-
tract was to advance, for the purposes specified therein, the sum of
$10,000, $5,000 of which was to be paid to Hatch and Warren between
March 1, 1891, and May 15th of the same year; and, of the remaining
$5,000, it was to be advanced in such "sums as may be desired by
the parties of the first part," but no sum greater in amount than
$1,000 of the last $5,000 at a time should be required to be paid by
the plaintiff, and he was entitled to a notice of 30 days of an intention
to draw such sum.   Taking into consideration the object sought to
be accomplished by the contract and the purpose of the parties there-
under, it is evident that it was contemplated that the first $5,000 would
create a fund by virtue of which the defendants would be enabled to
make necessary advances for the diligent prosecution of the action,
which had then been begun, and was pending, in Colorado.   We think
the fair construction of this contract, relating to the payment to be
made by the plaintiff thereunder, required the payment of the $5,000
within the time expressly stipulated, but that the second $5,000 was
not required to be paid upon the mere arbitrary desire of Hatch and
Warren, but that it intended to provide that, as the necessity of the
litigation required, Hatch and Warren had the right to demand of the
plaintiff payment of the additional $5,000 in sums of $1,000 each, as
should be required for the diligent prosecution of the action; and,
unless such sums were required for that purpose, there was no right
upon the part of Hatch and Warren to demand the same, and no obli-
gation on the part of the plaintiff to pay the same, although demand
was made therefor, unless it was required to discharge proper obliga-
tions in connection with the prosecution of the action.   Concluding
that this is the proper construction of this contract, the testimony is
to be examined for the purpose of seeing if Hatch and Warren, or
either of them, was guilty of any acts which constituted a breach of
the same, prior to the plaintiff's refusal to make further payments
thereunder, and whether he was excused from so doing.   The testi-
mony is undisputed that prior to November 23, 1891, the plaintiff had
paid to Hatch and Warren the first $5,000 within the stipulated time,
and had also advanced, upon the demand of the defendant Hatch,
$2,000 of the second $5,000.   At this time it appeared, without dis-
pute, that the action brought by Mrs. Daniels was pending in the

Colorado court, and that the same, by reason of default in taking the proper proceeding and necessary steps, was in a condition where it could be dismissed, and was only saved from such result by the consideration and stipulation of the attorneys for the defendant therein; that the reason for this condition rested in the fact that the attorneys representing Mrs. Daniels in Colorado had not been furnished with sufficient funds to enable them to take the proper and necessary steps in protection of Mrs. Daniels' rights therein. Of these facts the defendants were informed by the attorneys in Colorado, and one of them, Mr. Donnelly, had a personal interview with the defendant Hatch, and requested that he make payment in the sum of $500 in order that such attorney might proceed with the action. Hatch refused at that time to make payment of such sum, or any other, and only paid, in immediate connection with the lawsuit, a small sum for clerk's fees, and declined to pay more. As appears by the books of Hatch and Warren, there had been paid out up to and including the 30th day of September, 1892, the sum of $2,148.95. This sum was made up in part of $200 in cash for some undisclosed purpose, $423.04 to Warren, and $1,075 to Mrs. Daniels. There was at this time in the hands of Hatch, of the payments made by the plaintiffs herein, $4,851.05, and there was no immediate pressing necessity for the advance of this sum at that time. On the contrary, a small proportion only was necessary to relieve the default of Mrs. Daniels in her action and for the orderly prosecution of the same. Under such circumstances, it is perfectly clear that it was the duty of Hatch and Warren to make the necessary advances, and that the plaintiff could not be called upon to pay further sums until there was a necessity therefor. This being the relative condition of the parties at this time, Mr. Hatch, under date of the 27th of February, 1891, made a demand upon the plaintiff for a further payment of $1,000. The plaintiff was excused from making this payment, and could not be placed in default by refusal to comply with the demand, for two reasons: First, there was no right in the defendants to demand the payment under the terms of the contract; and, second, the plaintiff, after the demand, saw the defendant Warren, and was informed by him that the money was not then wanted, and that he need not pay the same at that time. In the face of this condition, however, the defendants, under date of November 23, 1891, wrote that the plaintiff was in default by failing to pay the last sum demanded, and that by reason thereof the contract with him "is canceled,—has become void and of no further effect." It is clear, therefore, that Hatch and Warren on that date were guilty of a clear breach of the contract—First, for the reason that the defendant Hatch, who had the custody of the money, had refused to advance the same for the purposes for which it had been paid, and such refusal was in violation of the terms of the contract; second, for the reason that, in violation of its terms, and when the plaintiff was not in default, they notified him that they canceled the same and elected to treat it as void and of no effect. These acts constituted clear breaches of the contract by the defendants, and the plaintiff, by reason thereof, was absolved from a further fulfillment of the same.

The latter act, constituting the breach, is averred in the complaint

as one of the grounds for the maintenance of this action. The complaint does not in terms aver a breach of the contract in the refusal by Hatch to pay the money as necessity required for the proper prosecution of Mrs. Daniels' action. The evidence, however, of such breach, was given, and stands undisputed in the record, and no objection was taken that it was not admissible under the complaint; consequently, it may be considered by this court, and the complaint be deemed to be amended, in order to give effect to the proof, as nobody is prejudiced or misled thereby. Drexel v. Pease (Sup.) 13 N. Y. Supp. 774; Bate v. Graham, 11 N. Y. 237.

It seems clear, therefore, that a breach of this contract was established by undisputed proof prior to the time when Warren withdrew from the prosecution of the action. But we are also of the opinion that this action in withdrawing and refusing to perform his contract with Mrs. Daniels constituted a breach of the contract with the plaintiff, and that by reason of it the latter was absolved from further fulfillment of its terms. The contract between the parties to this action is to be construed in connection with the contract between Hatch and Warren and Mrs. Daniels. By the terms of the latter, it was stipulated that Mrs. Daniels should have the personal service of Warren in the conduct of the litigation. It is clear that it could not be fulfilled in conformity with its terms unless Warren gave his personal service. The consideration for the plaintiff's contract was the assignment of one-half of the interest possessed by Hatch and Warren therein; consequently, the plaintiff had the right to demand that that contract be fulfilled according to its terms. It may well have been the personal service of Warren in the conduct of that litigation which was the inducing cause of plaintiff's executing the contract and entering into the engagement which he made. He was entitled to insist that it be performed in accordance with its terms, and Hatch and Warren had contracted with him that it would be so performed. The only way in which Hatch and Warren could avoid this result would be by the plaintiff's consenting that it be otherwise performed. It was competent for him to waive performance by Warren; it was within his right to insist upon it. It is clear that he never waived any of his rights and at all times stood upon the fulfillment of the contract which he made. The defendant Hatch had no right to insist that the plaintiff accept performance by any other person. It may be his misfortune that without his fault Warren withdrew from the fulfillment of the contract, and thereby made it impossible for him to perform the same, but the plaintiff is not to be prejudiced in any of his rights by such fact, nor can Hatch complain of such result because the plaintiff stands insisting upon his legal rights in the premises. It is entirely immaterial to any question which concerns the legal rights of the parties to this action that Hatch subsequently procured Mrs. Daniels' lawsuit to be tried and conducted with vigor and skill. That was no concern of the plaintiff, as such act was not in fulfillment of the terms of his contract, and he was not bound to accept the same as performance. Under date of October 1, 1892, the plaintiff notified the defendants of their breach of the contract and demanded a return of the money which he had paid thereunder.

At this time Hatch was in default on the contract in failing to advance the moneys as required thereby, and his letter to the plaintiff canceling the same remained of record, unrevoked, and it was after that time that Hatch attempted to make fulfillment of the contract with Mrs. Daniels. In no view, therefore, upon the undisputed proof, can we escape the conclusion that Hatch and Warren were both guilty of a breach of the contract with the plaintiff at the time when he made his demand for the return of the money paid thereunder and elected to treat the contract as terminated on account of the defendants' breaches of the same. This was clearly within his legal rights, and by reason of the then condition he became entitled to have and recover such damages as he had sustained, which might be properly recoverable.

It is earnestly insisted, however, that, if there was a breach of the contract, nevertheless the proof shows that no damages beyond such as are nominal have been sustained by the plaintiff. It is the claim of the learned counsel for the defendant Hatch that the measure of plaintiff's damage is the "benefit to him of having the contract performed," and that this constitutes the measure of damage. On this hypothesis, the claim is advanced that the actual result showed that Mrs. Daniels, in fact, had no cause of action or right in her husband's estate, and that therefore the plaintiff could by no possibility take anything of advantage under his contract. It may be conceded that such rule of damage is the true rule if the means exist by which the measurement can be applied. The rule, however, fails as applied to this action, for the reason that by the defendants' acts the contract never could be performed, in consequence of which all basis for the measurement of damages upon any consideration of result which might have flowed therefrom is futile, and under such circumstances application of the rule is rendered impossible. In Friedland v. Myers, 139 N. Y. 432, 34 N. E. 1055, an action was brought for a breach of contract in the lease of a building for a special purpose. The court held that ordinarily in case of lease the measure of damage would be the difference. between the rent reserved and the actual value of the lease, but that the damages were not limited to that sum, and, the lease being for a special purpose, proof of damage under the rule would be practically impossible of ascertainment, and that a recovery could be had for other damages that were the proximate effect of the breach of the covenant, so far as they were not speculative or uncertain in character, and might be deemed to be within the fair contemplation of the parties when the lease was made, and might have been foreseen as a consequence of a breach of the covenant. The plaintiff therein was permitted to recover for his actual and necessary expenses incurred in preparing for the occupation of the premises, and that such item properly embraced architect's fees in making drawings for cases, counters, and other necessary features required in the business; it appearing that this work was done with the knowledge and assent of the defendant, and that his conduct throughout was such as to invite the expenditure. To the same effect is Bernstein v. Meech, 130 N. Y. 354, 29 N. E. 255. That was an action to recover damages for the breach of a theatrical contract, where

the compensation of the plaintiff was to be 50 per cent. of the gross receipts realized from the performances to be given. It was impossible to determine what those receipts would have been, and plaintiff was permitted. to prove his expenses in preparing for the fulfillment of the contract. Mr. Justice Bradley, writing for the court, said:

"His loss also consisted of the expenses by him incurred to prepare and provide for such performance. While the plaintiff was unable to prove the value in profits of his contract, he was properly permitted to recover the amount of such loss as it appeared that he had suffered by the defendant's breach."

This rule has been uniformly recognized. Dickinson v. Hart, 142 N. Y. 183, 36 N. E. 801. The present case falls within the same principle. Here it was impossible to establish what the plaintiff's damages were, or would have been, had the contract been fulfilled, as it was rendered absolutely impossible of performance. But the plaintiff was permitted to prove the moneys which he advanced, and the expense which he incurred in connection with it. These defendants had knowledge of such expense and extent of the same, because they received the money. Consequently, the case falls squarely within the rule of the cases we have cited.

There is no other question which requires consideration. It follows, therefore, that the judgment should be affirmed, with costs. All concur, except INGRAHAM, J., who dissents.

INGRAHAM, J. I am unable to concur in the affirmance of this judgment. The contract between the plaintiff and the defendants was made on the 27th day of February, 1891. By it the plaintiff agreed to pay, under certain conditions, $10,000, and in consideration thereof the defendants sold, assigned, transferred, and set over to the plaintiff an undivided half interest in and to a contract theretofore executed between one Lilyon B. Daniels and the defendants, and of any and all moneys and property that the defendants may derive or receive under said contract, except disbursements. The contract between the defendants and Daniels was annexed to the contract between the plaintiff and the defendants, and by that contract Daniels assigned and transferred to the defendants 30 per cent. of her undivided share of and of her claim, right, title, and interest in and to certain property which had belonged. to one W. B. Daniels, deceased, and in or to any claim or chose in action against the said W. B. Daniels or his estate. By this contract the defendants agreed to prosecute the claim of the said Lilyon B. Daniels against the estate of W. B. Daniels, and to furnish "the personal services of the said Lyman E. Warren, at any and all times when it shall be necessary, or when reasonably requested by the party of the first part so to do." This agreement also provided that the defendants, who were attorneys and counselors at law, "must assume to, and do, make provision for obtaining the money for the payment of any and all disbursements that may be required by them, and for carrying out this contract, so long as they undertake and continue in the prosecution of the matters contemplated by the terms of this agreement. And the parties of the second part (defendants) shall have the right, at any time,

to withdraw from the provisions of this agreement, and in such event shall be entitled to a lien upon the interests of the party of the first part in and to any of the real or personal estate in which she shall have an interest as the widow of the said W. B. Daniels to the extent of the disbursements or cash that shall have been obtained, advanced, or loaned, or paid out by the parties of the second part for the purpose of carrying out this contract." This contract between Daniels and the defendants being annexed to the contract between the plaintiff and the defendants, the plaintiff is chargeable with knowledge of its terms.

It seems that in the year 1892 the defendants dissolved partnership as the result of a dispute. Whereupon Warren wrote to Mrs. Daniels· a letter dated September 29, 1892, as follows:

"The firm of Hatch & Warren has been dissolved. Under the provisions of the contract made with Hatch & Warren, that said Hatch & Warren 'shall have a right at any time to withdraw from the provisions of that agreement,' I hereby withdraw from the provisions of that agreement, and declare the same terminated and ended. Yours truly, Lyman E. Warren."

On the 30th of September Mrs. Daniels wrote a letter to the defendants, stating that she had received the letter from Warren, and that "in consequence of this letter, and the refusal of Mr. Hatch and of Mr. Warren to carry out their contract, I hereby notify you that such contract is annulled and terminated. I further notify you that from this date you cease to meddle with my affairs in any way, and to do any further act or thing either for or against me in this matter, as I have made other arrangements for transacting my business. Very truly, Mrs. L. Daniels." In answer to this letter the defendant Hatch wrote to Mrs. Daniels, acknowledging its receipt, claiming that Warren did not have the right to declare her contract terminated, and that Hatch & Warren had advanced a considerable sum of money under the terms and conditions of the contract, and were ready to do and perform all the terms and conditions of the contract. Nothing further seems to have been done by Hatch & Warren under the contract to the 10th day of February, 1893, when this action was commenced. Assuming, as we must, that this action was to recover the damages sustained by a breach of the contract between the plaintiff and the defendant, and assuming that there was evidence to justify a finding that there had been a breach of their contract with Mrs. Daniels prior to the commencement of the action, the substantial question is as to the measure of damages to which the plaintiff was entitled. It was proved, without objection, that subsequent to the commencement of the action the defendant Hatch, with the consent of Mrs. Daniels, did prosecute the action brought by Mrs. Daniels to recover her interest in the property of W. B. Daniels, deceased; that that action was tried in the year 1898, and resulted in the defeat of Mrs. Daniels, and a judgment was entered, which was subsequently affirmed on appeal. It was thus established that Mrs. Daniels had no claim against the estate of W. B. Daniels, which was the subject-matter of the assignment by Mrs. Daniels to the defendants, which could be enforced. There was no express obligation in the contract between the plaintiff and the defendants that the defendants would

carry out the contract with Mrs. Daniels and continue to act for her in the prosecution of these claims. The plaintiff seems to have been willing to pay his money upon a transfer to him of one-half of the amount that the defendants would receive under their contract with Mrs. Daniels. So far as I can see, the only agreement that the defendants made with the plaintiff was that they would act in good faith in carrying out the contract between themselves and Mrs. Daniels, and realize as much as possible in their conduct of the prosecution of her claim against the estate of W. B. Daniels. Assuming that this contract was broken, and that Hatch & Warren failed to carry out that implied agreement, the damages that the plaintiff sustained in consequence of the breach of that undertaking was the amount that he could show that he would have recovered in case the agreement had been carried out; but it seems to me that the plaintiff has failed to establish that any amount could have been recovered upon the claim of Mrs. Daniels against the estate of W. B. Daniels, or that the plaintiff was entitled to more than nominal damages. It is true that Warren refused to take part in the prosecution of the claims against Mrs. Daniels, and that the contract with Mrs. Daniels provided that the defendants would furnish the personal services of Warren at any and at all times when it should be necessary, or when reasonably requested by Mrs. Daniels; but, so far as appears, Mrs. Daniels never requested nor required the defendants to furnish the services of Warren after his withdrawal from the firm, and she subsequently consented to Hatch's proceeding to conduct the litigation with his partner, Mr. Wicks, and such services were subsequently actually rendered, and the claims prosecuted. Upon what basis it can be said that the plaintiff sustained any damage by reason of any of the breaches of the contract relied upon, I am unable to see. Nothing has ever been realized upon these claims, and upon this record it must be assumed that the claims were without foundation, and of no value; and what the plaintiff obtained by his assignment was one-half interest of the defendants in certain claims which were not enforceable, and from which nothing has been realized. Basing this action, as it must be based, upon a claim for the damage sustained in consequence of a breach of the contract by the defendants, it seems to me that the evidence conclusively established that the plaintiff sustained no injury by such a breach, as his interest in the contract between Mrs. Daniels and the defendants was valueless, and nothing has ever been received by them, and no recovery has ever been had upon the claims of Mrs. Daniels, of which the defendants were entitled to receive 30 per cent., one-half of which was assigned to the plaintiff. This contract between the defendants and Mrs. Daniels was one which, upon its face, was void for champerty, and the plaintiff, who is a lawyer, must be chargeable with knowledge of that fact. He paid his money upon the chance of obtaining an interest in a recovery, if one was had, upon Mrs. Daniels' claims. As a consideration for the payment of that money, he obtained an interest in a contract which could not be enforced, and which the subsequent events have shown to be of no value, and, having made such a contract with his eyes open, and taking the chances of a recovery of a large sum

of money if the speculation had succeeded, I can see no reason why the court should interfere to allow him to recover back what he had paid, the speculation that he entered into having been unsuccessful.

I think the judgment should be reversed.